Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000505
16-AUG-2016
08:19 AM

NO. CAAP-14-0000505

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
PATRICIO AQUINO, also known as ROGER AQUINO, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 12-1-0211)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Fujise and Reifurth, JJ.)

Defendant-Appellant Patricio Aquino also known as Roger Aquino (Aquino) appeals from the January 28, 2014 judgment of conviction and sentence of the Circuit Court of the First Circuit (Circuit Court),[1] convicting Aquino of Attempted Murder in the Second Degree in violation of Hawaii Revised Statutes (HRS) §§ 705-500 and 707-701.5 (2014).

On appeal, Aquino alleges the Circuit Court erred in (1) failing to conduct a proper colloquy to ensure Aquino's waiver of a jury trial was knowing, intelligent, and voluntary; (2) finding Aquino did not lack legal capacity when he committed the offense; (3) rejecting Aquino's non-self-induced-intoxication defense, and (4) finding Aquino had the requisite intent to commit Attempted Murder in the Second Degree.

After a careful review of the points raised, arguments made by the parties, the applicable authority, and the record, we resolve Aquino's issues on appeal as follows and affirm.

---

[1] The Honorable Rom A. Trader presided.

1.    Aquino argues on appeal that the Circuit Court failed to conduct a proper colloquy regarding his waiver of a jury trial during the March 21, 2013 hearing; Aquino contends the Circuit Court's failure to conduct a proper colloquy is plain error, and that his rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 5, 8, and 14 of the Hawai'i State Constitution were violated.

Aquino's waiver of his right to a jury trial was taken by the Circuit Court on March 21, 2013.  Aquino is a native of the Philippines and speaks English as a second language.  An Ilocano interpreter was provided during his waiver.  While it appears that Aquino had at least a rudimentary command of spoken English, the Circuit Court urged Aquino to use the interpreter's services.

In addition to the oral colloquy, Aquino provided the Circuit Court with his written waiver.  The Circuit Court also entered into a colloquy with Aquino to ensure that Aquino had discussed the waiver with his counsel and understood the content of the written waiver.  The Circuit Court also questioned Aquino at length to determine whether he understood the difference between a jury trial and a judge trial and Aquino responded that he understood and emphasized the effect a waiver to a jury trial would have on him.  Although Aquino argues that the Ilocano interpreter was not used and the colloquy showed Aquino was confused, our review of the record leads to the conclusion Aquino's assertions are not well-founded.

Aquino points to the letters he sent to the Circuit Court after verdict was rendered, asserting that they show he believed his charge would be reduced to an assault if he agreed to a "judge trial" and that despite the lengthy colloquy with the Circuit Court, that he nevertheless believed he would receive a trial by jury.[2]   First, the two assertions are contradictory; if

_____

[2]      In his motion for withdrawal of counsel, Aquino's trial attorney alleged that, after Aquino sent his November 7, 2013 letter to the Circuit Court, counsel met with Aquino to discuss his concerns as stated in the letter.  Although Aquino seemed to be satisfied with his legal representation after their meeting, Aquino's second, December 29, 2013 letter was sent to the
(continued...)

he believed he would receive a reduction of the charge in exchange for his waiver, he could not also reasonably believe he would receive a jury trial after he waived that right.

Second, the Circuit Court clearly stated that it was making "no promises" regarding the reduction in charge even if it was to decide the case itself. Again, the record does not support Aquino's argument.

Third, Aquino's repeated assertion during the colloquy with the Circuit Court that he wanted a "judge trial" is simply inconsistent with his subsequent claim he did not understand what a judge trial was and his professed belief that he was, nevertheless, going to receive a jury trial.

Reviewing the totality of the circumstances, taking into account his background, experience, education, and conduct, we cannot conclude Aquino's challenge to the validity of his waiver is supported by the record. State v. Friedman, 93 Hawai'i 63, 70, 996 P.2d 268, 275 (2000) (taking into account "the defendant's background, experience, and conduct" as part of the totality of the circumstances).

2. Aquino challenges the Circuit Court's determination that Aquino had substantial capacity to appreciate the wrongfulness of his conduct and was able to conform his conduct the requirements of the law. Specifically, Aquino challenges the Circuit Court's findings of fact 152, 153, 154, and 155[3] and

---

[2](...continued)
Circuit Court, again alleging, as characterized by counsel, ineffective assistance of counsel, because according to Aquino, counsel had told him he would only receive a five-year sentence if he waived a jury trial. Counsel disputed Aquino's claim that counsel had misinformed Aquino.

The Circuit Court orally granted trial counsel's motion to withdraw, that was heard at the same hearing and immediately prior to sentencing. The Circuit Court made its order effective after sentencing. Please note that appellate counsel was appointed three days later, on January 31, 2014, but no motion for new trial was filed and Aquino does not claim he was afforded ineffective assistance of trial counsel on appeal.

[3]      The challenged findings of fact state as follows:

        152.  This Court finds the testimony of the Defendant with respect to his claimed inability to appreciate the wrongfulness of his conduct and/or to conform his conduct to the requirements of the law to be less than credible.
                                        (continued...)

conclusions of law 1, 8, and 9.[4] As all the challenged findings are dependent on the Circuit Court's credibility determinations, we decline to second-guess these decisions that are within the province of the trial court. Porter v. Hu, 116 Hawai'i 42, 59-60, 169 P.3d 994, 1011-12 (App. 2007).

"[W]e review a trial court's conclusions of law de novo, under the right/wrong standard of review." State v. Loo, 94 Hawai'i 207, 209, 10 P.3d 728, 730 (2000). In conclusion 1, the Circuit Court rendered its ultimate conclusion that Aquino committed Attempted Murder in the Second Degree. As Aquino makes no argument in support of his challenge to this conclusion apart

---

[3](...continued)

153. This Court finds the testimony, reports and opinions of the State's experts, namely Drs. Cunningham and Tisza, to be credible and persuasive as to the Defendant's penal responsibility in this case.

154. Based upon the foregoing factors considered by the Court in evaluating expert testimony, the Court gives significantly more weight to the testimony of both Drs. Cunningham and Tisza than that of the defense expert Dr. Wagner.

155. With all due respect to the defense expert, namely, Dr. Wagner, the Court finds his testimony and opinions with respect to penal responsibility to be largely unpersuasive.

[4] The challenged conclusions of law read as follows:

1. The State proved beyond a reasonable doubt that:

On or about the 2nd day of February, 2012, in the City and County of Honolulu, State of Hawaii, PATRICIO AQUINO, also known as Roger Aquino, did intentionally engage in conduct which is a substantial step in a course of conduct intended or known to cause the death of [complaining witness (CW)], thereby committing the offense of Attempted Murder in the Second Degree, in violation of Sections 705-500, 707-701.5 and 706-656 of the Hawaii Revised Statutes.

. . . .

8. The Defendant failed to prove, by a preponderance of the evidence, that he lacked the substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. See HRS § 704-400.

9. As such, this Court finds and concludes that the Defendant has failed to meet his burden of affirmatively proving the insanity defense.

from his challenge to conclusions 8 and 9, we deem any separate argument waived and review conclusion 1 in conjunction with conclusions 8 and 9. Hawai'i Rules of Appellate Procedure Rule 28(b)(7). In conclusions 8 and 9, the Circuit Court decided that Aquino failed to carry his burden of proving by a preponderance of the evidence, that he lacked the substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

The law is clear that Aquino had the burden as stated by the Circuit Court. Aquino, asserting the affirmative defense of lack of penal responsibility due to a mental disease, disorder or defect, "ha[d] the burden of going forward with the evidence to prove facts constituting the defense and of proving such facts by a preponderance of the evidence." State v. Uyesugi, 100 Hawai'i 442, 456, 60 P.3d 843, 857 (2002) (citation and internal quotation marks omitted).

Our review of the evidence presented, as well as the uncontested findings of fact, supports the Circuit Court's conclusion that Aquino did not carry his burden of proving he did not appreciate the wrongfulness of his conduct or lacked the ability to conform his conduct to the requirements of the law. HRS § 704-400 (2014).

As conceded by Aquino at trial, most of the facts in this case were not in dispute. Without provocation, Aquino attacked CW from behind and stabbed CW multiple times causing, among other wounds, deep lacerations to the left shoulder and stomach areas. During the attack, Aquino told CW that he would kill CW.

In explanation of his actions, Aquino testified that he heard voices that told him to kill CW because if he did not, CW would kill him; that CW would remove Aquino's two eyes and place them at the back of Aquino's head; and that CW looked at him in a menacing manner. Aquino also testified that the voices told him to kill himself, kill his dog, and to stab CW in the back, on the

right side,[5] all of which he did not do.  Dr. Tisza pointed to these facts, amongst others, in reaching her conclusion that Aquino could control his behavior.  Dr. Tisza also concluded Aquino's fleeing the scene of the crime was evidence that Aquino appreciated the wrongfulness of his actions.

Based on the evidence presented, the Circuit Court's determination that Aquino failed to prove his lack of capacity defense by a preponderance of the evidence was not wrong.

3.    Aquino argues that his methamphetamine use was not self-induced because under the definition of self-induced intoxication, he must or should have known that such intoxication would result in the effects he experienced.[6]  Aquino maintains that the psychotic effects resulting from his methamphetamine abuse lasted longer than the "normal period of intoxication" and that this "was different from the acute short-term effects of methamphetamine."  Aquino challenges the Circuit Court's findings 147 and 148, and conclusions of law 10, 11, 12, 13, 14, 19, and 20.

---

[5]      There was some confusion in Aquino's testimony regarding where the voices told him to stab CW.  However, it is clear that CW's injury was to his back, left shoulder area and Aquino testified that he chose to stab CW where he did "to contravene the voice."

[6]      HRS § 702-230(5) (2014) provides:

"Intoxication" means a disturbance of mental or physical capacities resulting from the introduction of substances into the body.

"Pathological intoxication" means intoxication grossly excessive in degree, given the amount of the intoxicant, to which the defendant does not know the defendant is susceptible and which results from a physical abnormality of the defendant.

"Self-induced intoxication" means intoxication caused by substances which the defendant knowingly introduces into the defendant's body, the tendency of which to cause intoxication the defendant knows or ought to know, unless the defendant introduces them pursuant to medical advice or under such circumstances as would afford a defense to a charge of a penal offense.

In findings 147 and 148, the Circuit Court found:

> 147. This Court finds the Defendant's reports of command auditory hallucinations and his claimed inability to know right from wrong or to control his behavior were the product of voluntary self-induced methamphetamine use.

> 148. This Court finds the Defendant's symptoms were not attributed to any other independent mental disease or disorder.

Aquino contends these findings are in error because "there was no evidence that Aquino knew of the negative effects from long term use [of methamphetamine] before the incident[,]" and therefore Aquino would "not be aware of how hazardous methamphetamine was to his mental health."

As a factual matter, there was evidence from which the Circuit Court could infer that Aquino's ingestion of methamphetamine was with the knowledge the drug caused hallucinations. Aquino told both Drs. Cunningham and Tisza during their respective interviews that he knew smoking "batu" caused the voices. He also told the doctors that he experienced hallucinations about a week prior to the stabbing and continued to ingest methamphetamine up until the day before. With regard to finding 148, all three experts testified that Aquino had no pre-existing mental illness and that the methamphetamine use caused the psychosis he suffered from at the time of the offense. Thus, these findings are not clearly erroneous.

We review conclusions of law on appeal *de novo*, under the right/wrong standard. Loo, 94 Hawai'i at 209, 10 P.3d at 730. Conclusion 10 is merely a restatement of subsections within HRS § 702-230. It is a correct statement of the law. For the same reason, we find the Circuit Court was correct in conclusion 12, restating HRS § 702-230(3).

In conclusion 11, the Circuit Court concluded Aquino's voluntary and knowing ingestion of methamphetamine did not constitute non-self-induced intoxication under HRS § 702-230(5). Aquino testified he used methamphetamine on a daily basis prior to the incident. Dr. Wagner testified that Aquino told him he had been hearing voices for a week prior to the stabbing. Dr. Tisza testified that Aquino admitted that he suffered auditory hallucinations when he used methamphetamine. Clearly,

Aquino was aware of methamphetamine's intoxicating effect, sufficient to establish self-induced intoxication pursuant to HRS § 702-230. Therefore, the Circuit Court was correct in conclusion 11.

In conclusion 13, the Circuit Court concluded that self-induced intoxication is not the kind of physical or mental disease, disorder or defect included in HRS § 704-400. Given the legislature's intent in excluding self-induced intoxication as a defense to an offense, State v. Young, 93 Hawai'i 224, 232, 999 P.2d 230, 238 (2000), the Circuit Court's conclusion is not wrong.

Based on the above analysis and evidence in the record, conclusion 14, rejecting Aquino's claim that his mental disorder was the product of non-self-induced intoxication, is not wrong.

Similarly, the Circuit Court's conclusions 19 and 20, ruling that Aquino is criminally responsible for stabbing CW and that the prosecution proved all the elements of the crime of Attempted Murder in the Second Degree proved beyond a reasonable doubt, are not wrong.

4.    Aquino maintains the Circuit Court erred in finding he had the requisite intent that his conduct would or could cause CW's death. Aquino argues on appeal that the Circuit Court erred in finding he had the requisite intent, because he testified that he "did not want to kill [CW] because he was his friend." "[I]t is not necessary for the prosecution to introduce direct evidence of a defendant's state of mind in order to prove that the defendant acted intentionally[.]" State v. Eastman, 81 Hawai'i 131, 140-41, 913 P.2d 57, 66-67 (1996).

There was substantial evidence of Aquino's intent. CW testified that, during Aquino's attack, Aquino told him Aquino was going to kill CW. In addition, witnesses testified to Aquino stabbing CW multiple times, in the shoulder and stomach, causing heavy bleeding. Aquino himself admitted at trial that he intended to kill CW, because "if I no kill him, he going to kill

me."  Aquino also confirmed he stabbed CW more than once "[b]ecause he told me he's going to kill me."

Based on the foregoing, we affirm the January 28, 2014 judgment of conviction and sentence of the Circuit Court of the First Circuit.

DATED:  Honolulu, Hawai'i, August 16, 2016.

On the briefs:

Dwight C.H. Lum,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge